

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

CARMELLA D. WOODARD,                    )
                                        )
        Plaintiff,                      )
                                        )
vs.                                     )       Case No. CV-96-8-0650-NE
                                        )
SUMMA TECHNOLOGY INCORPORATED, and )
SUMMA INTERNATIONAL RESOURCES           )
INCORPORATED,                           )
                                        )
        Defendants.                     )

**ENTERED**

**JUN 1 8 1997**

### MEMORANDUM OPINION

This action is before the court on defendants' motion for summary judgment. Plaintiff, an African-American female, alleges she was subjected to unlawful discrimination because of her gender in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e *et seq.* She also claims defendants subjected her to a sexually hostile work environment and thereafter terminated her employment in retaliation for her complaints about unwelcome sexual harassment by a co-worker and/or because of her race.

### I.  STATEMENT OF FACTS

### A.  Plaintiff's Employment with Summa

SUMMA Technology, Inc., is an engineering firm. It designs and manufactures products such as missile and aircraft parts for the United States government and private industry. SUMMA International Resources, Inc. provides temporary employees to SUMMA Technology, Inc. and other engineering firms. Both defendants are collectively referred to herein as "Summa."

In the first half of 1994, Gulfstream, one of Summa's primary customers, requested that Summa provide configuration management services for its programs.    Although the contract between Gulfstream and Summa did not require the latter to provide such services, Summa chose to do so, to appease its valued customer.    To that end, on May 9, 1994, Summa hired plaintiff, Carmella Woodard, to a temporary position as a configuration management clerk.    She was required to maintain various engineering drawings, and to make revisions to and copies of drawings for the Gulfstream program. Plaintiff's supervisor was Pam Shaia, manager of configuration management and data management.

**B.    Plaintiff's Allegations of Sexual Harassment**

Plaintiff alleges she was subjected to harassment by a male co-worker, Mike Hayes, an engineer employed by Summa.    She describes his unwelcome conduct as follows:

> Mr. Hayes repeatedly showed up uninvited to Ms. Woodard's cubicle without any business purpose.    He came to her cubicle multiple times a day.    He stared at her, on more than one occasion allowing his eyes to roam up and down Ms. Woodard's body.    What he said had a sexual overtone or contained sexual innuendo.    He commented on Ms. Woodard's appearance.    He commented on her hair or on how good she looked.    He asked Ms. Woodard if she dated white men.    He asked Ms. Woodard to come to a company softball game[.]    He asked Ms. Woodard to meet him at a hotel.    On one occasion he tried to physically force Ms. Woodard to sit in his lap.    He implied he could affect her ability to advance in the company if she rejected his advances.

(Plaintiff's Complaint, ¶ 7.)    Although Hayes allegedly "implied he could affect [plaintiff's] ability to advance in the company if she rejected his advances," it is undisputed that plaintiff did not

2

report to, or have any business interaction with Hayes. (Plaintiff's Deposition, at 80.)

In addition, plaintiff alleges that another Summa employee, Leon Edwards, a white male engineer and Hayes' friend, commented to a group of Summa employees as plaintiff walked by that he had seen her dancing on a table at a local "strip club." Edwards also allegedly commented on the length of plaintiff's hair (he told her he hired her because of her long hair), and allegedly made a prank call to her home. Plaintiff never reported any of Edwards' alleged conduct to Summa, however.

## C.   Summa's Personnel Policy on Harassment

Summa's personnel policies provide that any employee who sexually harasses or intimidates another employee will be "subject to disciplinary action including termination." (Defendants' Exhibit 3.) That policy was posted on company bulletin boards, included in temporary and permanent employee handbooks, and placed in Summa's policy and procedures manual. The policies direct "[a]ny employee who believes that he or she is or has been the subject of sexual harassment, or intimidation ... [to] report the alleged charge immediately." (Id.) The following actions then should occur.

Step 1. The individual alleging sexual harassment or intimidation will report the incident to the Human Resources Office. The individual will be interviewed to discuss the allegations. The Human Resources Office will accept verbal or written complaints, but after being interviewed, a written complaint must be submitted in order to be pursued.

Step 2. Within 48 hours of receiving the complaint, the alleged harasser will be called to the Human Resources

3

Office with their supervisor, and informed of the allegations. The Human Resources Manager, will review with the alleged harasser SUMMA's policy and indicate that a charge has been made. The alleged harasser will then have the opportunity to refute the allegations by responding in writing.

Step 3. If evidence warrants it, an investigation will be completed. If the investigation finds the alleged harasser to be guilty, the Manager Human Resources, the harasser's supervisor, and the Vice President Finance & Administration will determin[e] the action to be taken, including termination. Any action taken will be based on the facts of a case by case basis.

Step 4. If the allegations prove not to constitute sexual harassment, the alleged harasser will be fully exonerated. False accusations will result in severe disciplinary action, including termination.

(Defendants' Exhibit 3.)

## D. Plaintiff's Sexual Harassment Complaint

Plaintiff made her first and only complaint of sexual harassment on June 17, 1994. Plaintiff only complained about Hayes; she did not mention Edwards' conduct. Therefore, Summa had no duty to investigate Edwards.

Plaintiff told her supervisor, Pam Shaia, that Hayes "has been bugging me, and today he called me a bitch. I have had enough from him. He has been making innuendos all along, and I can't take it anymore." (Plaintiff's Deposition, at 125.) Shaia "immediately responded, 'We don't tolerate that'" (id., 126), and took plaintiff to Shaia's supervisor, Gene Berryman, vice president of engineering. Plaintiff remembers that Berryman's initial reaction was the same as Shaia's: "'[n]o, we don't tolerate that.'" (Id., 127.) Berryman directed plaintiff and Shaia to report to the human resources department.

4

Plaintiff then met with human resources director Gene Fundum, who also informed plaintiff that sexual harassment "wasn't tolerated and they would make sure that it was taken care of." (*Id.*, 130.) Even so, plaintiff perceived Fundum's attitude as being, "I really don't care about your story, but we will get to the bottom of it anyway.'" (*Id.*, 132.)

Regardless of the accuracy of plaintiff's perception, it is undisputed that Fundum instructed Hayes and his supervisor to come to his office immediately after his meeting with Shaia and plaintiff. Fundum informed Hayes of plaintiff's allegations and asked for a response. Hayes denied the allegations. Fundum then reviewed Summa's sexual harassment policy with Hayes,

> on a word by word basis. Asked him if he understood what Summa's policy was. I told him that it would not be tolerated. That his supervisor and manager would be monitoring his performance -- his conduct. I told him to stay away from Ms. Woodard. To stop whatever he -- if he was talking to her, don't talk to her anymore. Stay away from her. "And if you -- if you have done this, you will be terminated immediately."

(Fundum Deposition, at 128-29.) Fundum also placed a record of the disciplinary meeting in Hayes' personnel file.

Shaia then informed plaintiff "that they had talked to Mike, and he should not talk to me, he shouldn't make any kind of gestures toward me, period," and "that if he said or did anything, to let them know as soon as possible." (Plaintiff's Deposition, at 137.) When plaintiff later complained that Hayes might be able to look into her work area, Summa installed a partition to eliminate that possibility. Shaia moved a coffee machine and a facsimile machine to another location, to eliminate the need for Hayes to

5

visit the public area adjacent to plaintiff's cubicle. Shaia monitored plaintiff's work area, to ensure that Hayes was not bothering plaintiff. Summa eventually moved plaintiff to another building altogether (in which Shaia's office was located), to eliminate any possible contact between plaintiff and Hayes. Finally, human resources manager Gene Fundum reviewed Hayes' behavior on August 10 and November 18, 1994, to ensure that the harassment had stopped. Although plaintiff still had limited contact with Hayes after June 17, 1994, she admits Hayes did not say or do anything to her after that date.

**F.   Summa's Cost Reductions**

Throughout the latter half of 1994, Summa made a concerted effort to reduce its workforce. In particular, several employees working on the Gulfstream project were discharged, because of that program's poor financial performance. In December of 1994, Dave Cross, the vice president of finance, informed the other vice presidents that another reduction in force was required. Plaintiff was among those employees who were laid off. Gene Berryman, Summa's vice president of engineering, explained the circumstances surrounding plaintiff's discharge as follows:

> George Patch, the Vice President of Programs, decided to eliminate the secretarial position for his program managers, a position held by Katie Rollins. Ms. Rollins was a permanent SUMMA employee.
>
> In layoff situations, it was SUMMA's policy to layoff temporary employees before permanent employees, in an effort to retain permanent employees whenever possible. To my knowledge, this policy has been followed consistently at SUMMA. Thus, when Ms. [Katie] Rollins' (a permanent employee) position was eliminated, we decided to displace Ms. Woodard (a temporary employee) to

6

> retain the permanent employee.  Also, the Program Manager
> for Gulfstream [Harry Wiley] needed secretarial support,
> but only had funds in his budget for one position.
> Therefore, we combined the two positions, configuration
> management for Gulfstream and secretarial support for
> Gulfstream.  Ms. Rollins was now responsible for both
> functions.

(Defendants' Exhibit 2:  Berryman Affidavit, at 1-2.)  Plaintiff

claims she was terminated, not because of her temporary status, but

because of her race, and in retaliation for complaining about her

co-worker's alleged sexual harassment.

### II.  WOODARD'S HOSTILE WORK ENVIRONMENT CLAIM

Title VII "prohibits employment discrimination on the basis of

gender, and seeks to remove arbitrary barriers to sexual equality

at the workplace with respect to 'compensation, terms, conditions,

or privileges of employment.'"  *Henson v. City of Dundee*, 682 F.2d

897, 901 (11th Cir. 1981)(citations omitted).  Courts recognize two

forms of sexual harassment: *quid pro quo* sexual harassment; and,

hostile work environment sexual harassment.  *Quid pro quo* sexual

harassment occurs when an employer alters an employee's job

conditions as a result of the employee's refusal to submit to

sexual demands.  *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d

1311, 1315 (11th Cir. 1989), *reh'g denied*, 874 F.2d 821 (11th Cir.

1989).  Hostile work environment sexual harassment occurs when an

employer's conduct "has the purpose or effect of unreasonably

interfering with an individual's work performance or creating an

intimidating, hostile, or offensive environment."  *Steele*, 867 F.2d

at 1315.

> Unwelcome sexual advances, requests for sexual favors,
> and other verbal or physical conduct of a sexual nature

7

> constitute sexual harassment when ... such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

29 C.F.R. § 1604.11(a)(3)(1981).[1]  Plaintiff alleges only a claim for hostile work environment sexual harassment.[2]

The five elements of a *prima facie* Title VII claim for hostile work environment sexual harassment are:  (1) the employee belongs to a protected group; (2) the employee was subjected to unwelcome sexual harassment; (3) the harassment complained of was based upon the employee's sex; (4) the harassment complained of affected a "term, condition, or privilege" of employment, in that it was "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment"; and (5) the employer either knew, or should have known of the harassment, but failed to take prompt remedial action and, therefore, is liable under principles of *respondeat superior*. *Henson*, 682 F.2d at 903-905; *Martin v. Norfolk Southern Railway Company*, 926 F. Supp. 1044, 1050 (N.D. Ala. 1996).

---

[1] In General Electric Co. v. Gilbert, 429 U.S. 125, 97 S.Ct. 401 (1976), the Supreme Court suggested the degree to which courts should defer to the EEOC's interpretation of Title VII: "[w]e consider that the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance...." (citations omitted).

[2] Even though Mike Hayes allegedly "implied he could affect [plaintiff's] ability to advance in the company if she rejected his advances" (Complaint, ¶ 7), plaintiff has not argued in brief that she was subjected to *quid pro quo* sexual harassment, presumably because the alleged harasser was a co-worker, not her supervisor.

8

**A.    Woodard's Prima Facie Case**

**1.    Plaintiff can establish the first four elements of her prima facie case**

The evidence reveals, and defendants do not dispute that plaintiff can establish the first three elements of a *prima facie* case. Although it is questionable whether Hayes' alleged conduct was "sufficiently severe or pervasive" to create a hostile or abusive working environment, Summa has not argued this point. Instead, Summa argues that its remedial actions after learning of plaintiff's complaint absolve it from liability.

**2.    Respondeat superior**

In a hostile work environment setting, the harassing supervisor or co-employee does not act as the company, because he or she acts outside "the scope of actual or apparent authority to hire, fire, discipline, or promote." *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1316 (11th Cir. 1989). Thus, corporate liability "exists only through *respondeat superior*; liability exists where the corporate defendant knew or should have known of the harassment and failed to take prompt remedial action against the supervisor [or co-worker]." *Id.* (citations omitted). The remedial action taken by the employer must be "reasonably likely to prevent the misconduct from recurring.'" *Kilgore v. Thompson & Brock Management, Inc.*, 93 F.3d 752, 754 (11th Cir. 1996)(citations omitted). Thus, to avoid liability under a hostile work environment claim, Title VII requires the employer to do more than merely request that the offensive employee refrain from discriminatory conduct in the future. *DeGrace v. Rumsfeld*, 614

9

F.2d 796, 805 n.5 (1st Cir. 1980).   Summa more than met that burden.

Indeed, Summa's reaction to plaintiff's complaints was similar to that of the corporate defendant in *Steele*, 867 F.2d 1311. *Steele* also involved only a hostile work environment claim.   When determining whether the employer took prompt remedial action in response to complaints of supervisory harassment lodged by two employees, the *Steele* court said:

> The corporate employer knew of Bucknole's harassment, and it then took prompt remedial action.   The corporate employer sent Forbes [the company's Equal Employment Opportunity Officer] ... to interview the employees; it called Bucknole to New York ... for a reprimand; and it assured the employees that the harassment would stop.   Of special importance, Bucknole's harassment ended after the remedial action.   The corporate employer, therefore, is not liable for Bucknole's actions under the doctrine of *respondeat superior*.

*Steele*, 867 F.2d at 1316.

Summa's actions, like those of the defendant in *Steele*, were reasonably calculated to end the harassment and, in fact, did end the harassment.   When plaintiff complained to Pam Shaia on June 17, 1994, Shaia, Summa vice president Gene Berryman, and Summa human resources manager Gene Fundum all immediately said that sexual harassment would not be tolerated in Summa's workplace.   Fundum called the alleged harasser to his office for an interview that same day.   Fundum warned Hayes, both orally and in writing, that sexual harassment would not be tolerated in the Summa workplace, and that "if he harassed Ms. Woodard, or any other employee in any way, he would be terminated immediately." (Defendant's Exhibit 3: Letter to Hayes personnel file.)   That warning letter was placed in

10

Hayes' personnel file.  Also, management reevaluated the situation for some time after the initial complaint to ensure that the harassment stopped.  Plaintiff's working station was modified, and plaintiff was eventually transferred to another building to limit her contact with Hayes.  Clearly, Summa's response to plaintiff's complaint was both prompt and effective.  See *Waymire v. Harris County, Texas*, 86 F.3d 424, 429 (5th Cir. 1996)(written reprimand placed in employee's permanent file was prompt remedial measure, "even with the three month delay").

Plaintiff admits that Hayes' harassment ceased immediately after she complained to management.  Yet, plaintiff argues Summa did not sufficiently punish Hayes to ensure that no further harassment would occur.  However, "Title VII does not require an employer to use the most serious sanction available to punish the offender."  *Landgraf v. USI Film Products*, 968 F.2d 427, 430 (5th Cir. 1992), *aff'd*, 511 U.S. 244, 144 S.Ct. 1483 (1994).  Rather, Summa only was required to take steps "reasonably calculated to end the harassment."  *Garcia v. Elf Atochem*, 28 F.3d 446, 451 (5th Cir. 1994).  Each of the actions taken by Fundum and Shaia were reasonably calculated to (and, in fact, did) end the harassment.  Therefore, Summa is not liable for Hayes' actions under the doctrine of *respondeat superior*, and plaintiff's hostile work environment sexual harassment claim is due to be dismissed.

### III. WOODARD'S RETALIATION CLAIM

Woodard bears the burden of proving by a preponderance of the evidence that Summa intentionally retaliated against her.  That can

11

be done either by direct or circumstantial evidence. When a plaintiff's evidence is circumstantial in nature, however, the Supreme Court has developed a three stage framework for focusing the inquiry. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093-94, 67 L.Ed.2d 207 (1981); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). First, a plaintiff must establish a *prima facie* case. To establish a *prima facie* case of retaliation plaintiff must show: (1) a statutorily protected expression; (2) an adverse employment action; and (3) a causal link between the protected expression and the adverse action. *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993).

If a plaintiff establishes a *prima facie* case, then at the second stage of analysis the burden of production shifts to defendants to rebut the presumption of intentional discrimination by articulating legitimate, nondiscriminatory reasons for the employment action. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. If defendants do so, then in the final step of the inquiry plaintiff must have an opportunity to show by a preponderance of the evidence that defendants' stated reasons merely are pretexts for unlawful, discriminatory motives. *Id.*

## A. Plaintiff's prima facie case

Summa does not dispute that plaintiff can establish statutorily projected expression (she complained about her co-worker's harassment), or that she was subjected to an adverse

12

employment action (her termination). Instead, Summa asserts that
Woodard cannot establish a causal connection between the two
events. Woodard's burden is not onerous, however. Woodard merely
must show that "the protected activity and the adverse action were
not wholly unrelated." *Goldsmith v. City of Atmore*, 996 F.2d 1155,
1163 (11th Cir. 1993)(citations omitted). "At a minimum, a
plaintiff must generally establish that the employer was actually
aware of the protected expression at the time it took adverse
employment action." *Id*. (citations omitted). In June of 1994,
plaintiff complained about Hayes' alleged harassment to Gene
Berryman, vice president of engineering. Six months or so later,
Berryman made the decision to discharge plaintiff. Thus, plaintiff
has satisfied her burden at summary judgment for showing a "causal
link" between her sexual harassment complaints and her subsequent
termination, because she has shown that Summa's decision maker was
aware of her protected expression when he directed that Summa
undertake an employment action adverse to plaintiff's interest.

**B.   Summa's Legitimate, Nondiscriminatory Reasons**

    Summa presents the following legitimate nondiscriminatory
reason for plaintiff's discharge:

    Plaintiff's temporary employment ended because a
    permanent employee's position was eliminated, and
    pursuant to company policy, the permanent employee was
    given a position combining the duties of several
    positions including Plaintiff's.

(Defendants' Brief, at 17.) It is undisputed that a number of
employees were laid off, particularly those working on the
Gulfstream project, because of Summa's poor financial performance.

13

Terminating employees for cost-reduction reasons is sufficient to satisfy a defendant's burden. *See Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1125-26 (7th Cir. 1994)(recognizing reduction of salary costs as legitimate, nondiscriminatory reason for termination); *Pearlstein v. Staten Island Univ. Hosp.*, 886 F. Supp. 260, 269 (E.D.N.Y. 1995)(recognizing reduction in force as legitimate reason for termination); *Martin v. Westvaco Corp.*, 850 F. Supp. 83, 90 (D. Mass. 1994)(elimination of plaintiff's position to reduce costs and to ensure viability of that division was legitimate nondiscriminatory reason).

## C. Plaintiff's Evidence of Pretext

Plaintiff argues the following facts disprove Summa's stated reason for her discharge: (1) the decision to terminate plaintiff was allegedly made in November of 1994, prior to the elimination of the permanent employee position (*i.e.*, Katie Rollins' position) in December; (2) Summa represented to the EEOC that plaintiff was terminated because her temporary assignment came to an end; (3) Summa allegedly did not follow its own procedure, because it did not post an announcement on its bulletin board soliciting applications for the position in which the retained permanent employee (Rollins) was placed.

### 1. Timing of the decision to discharge plaintiff

The decision to eliminate the position of Katie Rollins was made in December of 1994. Thus, if the decision to terminate plaintiff was made before that date, it would disprove Summa's stated reason. Summa could not have known that it needed to

14

displace plaintiff to keep Rollins, unless the decision to eliminate Rollins' position was made <u>before</u> the decision to replace plaintiff with Rollins.

The only evidence plaintiff has to suggest that Summa decided to eliminate plaintiff before December of 1994 is a form entitled "Temporary Employee Retention/Termination Request," signed by Gene Berryman on November 14, 1994. (Fundum Deposition: Exhibit 15.) That document lists plaintiff's "expected termination date" as December 2, 1994. Plaintiff argues that proves Summa intended to discharge her even before Rollins' position was eliminated in December. On the other hand, Summa states that its managers are required to periodically evaluate whether temporary assignments should end or continue. As part of that process, managers complete "Temporary Employee Retention/Termination" forms. To that end, the document allows the supervisor to check "Retain" or "Terminate." <u>Berryman marked "Retain" on the November 14, 1994 form</u>. Also, plaintiff continued to work beyond December 2, 1994.

The mere fact that Berryman put an expected termination date of December 2, 1994, does nothing to disprove Summa's stated reason. Temporary positions inherently have expected termination dates. If not, they would be considered permanent positions. Also, plaintiff's argument is refuted by two other facts: Berry checked "Retain," not "Terminate," on plaintiff's form; and, plaintiff's work actually continued beyond December 2, 1994, the "expected termination date." Thus, plaintiff's argument that the decision to terminate her employment was made before Rollins'

15

position was eliminated is insufficient to survive summary judgment, because it is based on nothing more than "speculation." (Defendants' Reply, at 6 n.5.)  Plaintiff "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."  *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

### 2.   Summa's representations to the EEOC

Summa stated in the EEOC investigation that "Ms. Woodard merely came to the end of a temporary assignment, and was terminated." (Fundum Deposition: Exhibit 1, at D0009.)  Plaintiff notes that Summa made no mention of the elimination of Katie Rollins' position or any reduction in force in the EEOC investigation. This court agrees with defendants that plaintiff's argument is merely an "attempt to manufacture a dispute." (Defendants' Reply, at 6.)  The undisputed evidence shows that plaintiff's temporary assignment did come to an end.[3]  Although defendant might have failed to elaborate on how, or to whom, the duties of plaintiff's former position were distributed after her termination, that does nothing to disprove the fact that plaintiff's temporary position was eliminated.

### 3.   Summa's failure to seek applications for the position

Summa regularly posts announcements for job vacancies on its main company bulletin boards in each building, and in the human

---

[3] See the memorandum from Fundum to Payroll Department dated December 13, 1994, requesting that plaintiff be discharged because of the "end of temporary work assignment" (Fundum Deposition: Exhibit 1, at D0022.), and Fundum's January 11, 1995 letter to the Huntsville Unemployment Claims Center, noting the reason for plaintiff's separation as "end of temporary assignment." (*Id.*, at D0023.)

16

resources department, to make employees aware of job opportunities. Plaintiff argues that defendants' stated reason for her termination is disproved, because "when defendants replaced Ms. Woodard, they did not follow their own procedure, which required the job to be posted on company bulletin boards." (Plaintiff's Brief, at 29.) Yet, it is undisputed that plaintiff's job was eliminated as part of a reduction in force. The position to which Rollins was placed was not a "job vacancy," it was merely a consolidation of duties from other pre-existing positions. Thus, Summa's policies for announcing "job vacancies" did not come into play, because no new position was created.

### 4. Plaintiff has failed to disprove Summa's stated reason for her termination

"A plaintiff, when faced with a motion for summary judgment, cannot rely on attenuated possibilities that a jury would infer a discriminatory motive, but rather must come forward with sufficient evidence to establish a *prima facie* case and respond sufficiently to any rebuttal by the defendant to create a genuine issue of fact." *Pace v. Southern Railway Company*, 701 F.2d, 1383, 1391 (11th Cir.), *cert. denied*, 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983). Under the shifting burden analysis expressed in *McDonnell Douglas* and its progeny, to survive summary judgment plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Sheridan v. E.I.*

17

*DuPont De Nemours & Co.*, 100 F.3d 1061, 1072 (3d Cir. 1996)(*en banc*)(citation and internal quotation marks omitted).

Plaintiff has failed to sufficiently respond to defendants' rebuttal by disproving the stated reason for her termination. Instead, the undisputed evidence reveals the following: plaintiff's temporary employment was terminated because a permanent employee's position was eliminated and, pursuant to company policy, the permanent employee was given a position combining the duties of several positions, including plaintiff's. Plaintiff has not disproved those facts. Accordingly, Summa's motion for summary judgment is due to be granted as to plaintiff's retaliation claim.

## IV. WOODARD'S RACE DISCRIMINATION CLAIM

In addition to her retaliation claim, plaintiff alleges her discharge was racially motivated. That claim also must be dismissed, because plaintiff has failed to disprove Summa's legitimate, nondiscriminatory reason for terminating her employment. A reduction in force is an unfortunate, undesirable business necessity. Terminating an employee who is serving in a satisfactory, if not exemplar, manner will often leave the terminated employee feeling resentful. However, such actions are often required in the business world, and this court will not take the place of the employer in determining how, where, when, and why a reduction in force should occur.

18

## V.   CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is due to be granted.   An order consistent with this memorandum opinion shall be entered contemporaneously herewith.

DONE this  /8ᵗʰ day of June, 1997.

United States District Judge

**19**